**EXHIBIT 1**

 CT Corporation

**Service of Process Transmittal**
04/19/2013
CT Log Number 522557706

**TO:** Cathy Neville
World Wrestling Entertainment, Inc.
1241 East Main Street
Stamford, CT 06902

**RE:** **Process Served in Delaware**

**FOR:** World Wrestling Entertainment, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Andrew Green and Staci Green, etc., Pltfs. vs. Paul D. Wight, Jr., etc., et al. including World Wrestling Entertainment, Inc., etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Complaint, Certificate, Summons |
| **COURT/AGENCY:** | Maricopa County - Superior Court, AZ Case # CV2013003255 |
| **NATURE OF ACTION:** | Personal Injury - Defendant failed to exercise proper control over Big Show to Prevent harm to Plaintiff - Seeking Compensatory Damages, Punitive/Exemplary Damages |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 04/19/2013 postmarked: "Not Post Marked" |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service |
| **ATTORNEY(S) / SENDER(S):** | George E. Mueller Mueller Law Group, P.A. 2141 East Camelback Road Suite 100 Phoenix, AZ 85016 602-222-9800 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 799574373151 Image SOP Email Notification, Meg Ytuarte meg.ytuarte@wwecorp.com |
| **SIGNED:** | The Corporation Trust Company |
| **PER:** | Melanie McGrath |
| **ADDRESS:** | 1209 Orange Street Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**In the Superior Court of the State of Arizona
In and For the County of Maricopa**

## CV2013-003255

(Please Print or Type)

**Plaintiff's Attorney:**
George Mueller

**Attorney's Bar Number:**
015209

**Plaintiff's Name:**

Andrew Green

**Defendant's Name:**

Paul D. Wight, Jr., a/k/a Big Show®

MICHAEL K. JEANES, CLE
BY
FILED
13 APR -5  PM 4: 39

Is Interpreter Needed? ☐ Yes ☒ No

If yes, what language: _____

To the best of my knowledge, all information is true and correct.

_____
**Attorney/Pro Per Signature** (If no attorney, YOUR signature)

**Plaintiff's Address:**

11 Bob White Way, Weatogue, CT 06089

**EMERGENCY ORDER SOUGHT:**
(if applicable)

☐ Temporary Restraining Order
☐ OSC – Order to Show Cause
☐ Employer Sanction

☐ Provisional Remedy
☐ Election Challenge
☐ Other _____

☒ RULE 8(i) COMPLEX LITIGATION DOES NOT APPLY. (Mark appropriate box under **Nature of Action**).

☐ RULE 8(i) COMPLEX LITIGATION APPLIES  Rule 8(i) of the Rules of Civil Procedure defines a "Complex Case" as civil actions that require continuous judicial management. A typical case involves a large number of witnesses, a substantial amount of documentary evidence, and a large number of separately represented parties. (Mark appropriate box on page two as to complexity, **in addition** to the Nature of Action case category).

### NATURE OF ACTION
(Place an "X" next to the one case category that most accurately describes your primary case.)

**100 TORT MOTOR VEHICLE:**
☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death
**110 TORT NON-MOTOR VEHICLE:**
☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☒ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☒ 113 Intentional Tort
☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____
**120 MEDICAL MALPRACTICE:**
☐ 121 Physician M.D.  ☐ 123 Hospital
☐ 122 Physician D.O  ☐ 124 Other

**130 CONTRACTS:**
☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☐ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds - Sale
☐ Construction Defects (Residential/Commercial)
     ☐ 136 Six to Nineteen Structures
     ☐ 137 Twenty or More Structures

**150-199 OTHER CIVIL CASE TYPES:**
☐ 156 Eminent Domain/Condemnation
☐ 151 Forcible Detainer
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment

Superior Court of Arizona in Maricopa County
LRD January 1, 2009                    Page 1 of 2                    CV10f
                                                          Use current version

☐ 158 Quiet Title
☐ 160 Forfeiture
☐ 175 Election Challenge
☐ 179 Employer Sanction Action (A.R.S. §23-212)
☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream  Adjudication)
☐ 187 Real Property
☐ Sexually Violent Persons (A.R.S. §36-3704)
      (Except Maricopa County)
☐ Minor Abortion (See Juvenile in Maricopa County)
☐ Special Action Against Lower Courts
      (See lower court appeal cover sheet in Maricopa)

**150-199 UNCLASSIFIED CIVIL CASE TYPES:**
☐ Administrative Review
      (See lower court appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
(All other tax matters must be filed in the AZ Tax
Court)

☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute - Other
☐ 159 Restoration of Civil Rights (Federal)
☐ 159 Clearance of Records (A.R.S. §13-4051)
☐ 190 Declaration of Factual Innocence(A.R.S.§12-771)
☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S.§46-451)
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain–Light Rail Only
☐ 177 Interpleader– Automobile Only
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐ 183 Employment Dispute - Discrimination
☐ 185 Employment Dispute - Other
☐ 163 Other
_____
(Specify)

☐ 155 Declaratory Judgment

## COMPLEXITY OF THE CASE

If you marked the box on page one indicating that Complex Litigation applies, place an "X" in the box of no less than one of the following:

☐ Antitrust/Trade Regulation
☐ Construction Defect with many parties or structures
☐ Mass Tort
☐ Securities Litigation with many parties
☐ Environmental Toxic Tort with many parties
☐ Class Action Claims
☐ Insurance Coverage Claims arising from the above-listed case types

Additional Plaintiffs

Staci Green _____

Additional Defendants

World Wrestling Entertainment, Inc. _____

1

2  BERNSTEIN CHERNEY, L.L.P.
   777 Third Avenue
3  New York, NY 10017
   Telephone: (212) 381-9684
4  Facsimile: (646) 304-9535
   E-mail: hbernstein@bernsteincherney.com
5  Hartley Bernstein (1050178 NY) (Pro Hac Vice AZ)

6
   MUELLER LAW GROUP, P.A.
7  2141 East Camelback Road, Suite 100
   Phoenix, Arizona 85016
8  Telephone: (602) 222-9800
   Facsimile: (888) 411-1236
9  E-mail: mschaefer@muellerlawgroup.com
   George E. Mueller (015209)
10

11  Attorneys for Plaintiffs

12  **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
    **IN AND FOR THE COUNTY OF MARICOPA**
13

14  ANDREW GREEN and                    CASE NO.
    STACI GREEN, Husband and Wife,

15          Plaintiffs,                 CV 2013 - 003255

16          v.

17  PAUL D. WIGHT, JR., a/k/a BIG       If you would like legal advice from a lawyer,
    SHOW®, an individual, WORLD         contact the Lawyer Referral Service at
18  WRESTLING ENTERTAINMENT,
    INC., a foreign corporation doing        602-257-4434
19  business in Arizona, DOES 1-30, XYZ           or
    CORPORATIONS 1-30, and BLACK        www.lawyerfinders.org.
20  AND WHITE PARTNERSHIPS 1-30,
                                        Sponsored by the
21                                      Maricopa County Bar Association
            Defendants.
22                                      **SUMMONS**

23  **THE STATE OF ARIZONA TO THE DEFENDANT:**

24
        Corporation Trust Company
        Statutory Agent for World Wrestling Entertainment, Inc.

Corporation Trust Center
1209 Orange Street
Wilmington, Delaware 19801

YOU ARE HEREBY SUMMONED and required to appear and defend, within the time applicable, in this action in this Court. If served within Arizona, you shall appear and defend within 20 days after the service of the Summons and Complaint upon you, exclusive of the day of service. If served out of the State of Arizona--whether by direct service, by registered or certified mail, or by publication--you shall appear and defend within 30 days after the service of the Summons and Complaint upon you is complete, exclusive of the day of service. Where process is served upon the Arizona Director of Insurance as an insurer's attorney to receive service of legal process against it in this state, the insurer shall not be required to appear, answer or plead until expiration of 40 days after date of such service upon the Director. Service by registered or certified mail without the State of Arizona is complete 30 days after the date of filing the receipt and affidavit of service with the Court. Service by publication is complete 30 days after the date of first publication. Direct service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and return receipt or Officer's Return. ARCP 4, 4.1, 4.2 and 12(a).

Copies of the pleadings filed herein may be obtained by contacting the Clerk of the Superior Court, Maricopa County, 101/201 W. Jefferson, Phoenix, Arizona 85003. ARCP 4.1(n) (Service by Publication)

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or response upon the Plaintiff's attorney. ARCP 5, 10; ARS § 12-311.

REQUESTS FOR REASONABLE ACCOMMODATION for persons with disabilities must be made to the division assigned to the case by parties at least 3 judicial days in advance of a scheduled court proceeding. ARCP 45(g).

The name and address of Plaintiffs' attorney is:

MUELLER LAW GROUP, P.A.
George E. Mueller
2141 East Camelback Road, Suite 100
Phoenix, AZ 85016

SIGNED AND SEALED THIS DATE: _____

_____

CLERK OF COURT

APR  5 2013

By _____   MICHAEL K. JEANES, CLERK
Deputy Clerk                      C. HOWE
                                  DEPUTY CLERK

METHOD OF SERVICE:
_____ Private Process Service
_____ Sheriff or Marshall
_____ Personal Service
_____ Registered/Certified Mail (out of state)

MICHAEL K. JEANES
Clerk of the Superior Court
By Capri Howe, Deputy
Date 04/05/2013 Time 16:45:01
Description                    Amount
———— CASE# CV2013-003255 ————
CIVIL NEW COMPLAINT            309.00
——————————————————————————————
TOTAL AMOUNT                   309.00
          Receipt# 22889048

BERNSTEIN CHERNEY, L.L.P.
777 Third Avenue
New York, NY 10017
Telephone: (212) 381-9684
Facsimile: (646) 304-9535
E-mail: hbernstein@bernsteincherney.com
Hartley Bernstein (1050178 NY) (Pro Hac Vice AZ)

MUELLER LAW GROUP, P.A.
2141 East Camelback Road, Suite 100
Phoenix, Arizona 85016
Telephone: (602) 222-9800
Facsimile: (888) 411-1236
E-mail: mschaefer@muellerlawgroup.com
George E. Mueller (015209)

Attorneys for Plaintiffs

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| ANDREW GREEN and<br>STACI GREEN, Husband and Wife,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL D. WIGHT, JR., a/k/a BIG SHOW®, an individual, WORLD WRESTLING ENTERTAINMENT, INC., a foreign corporation doing business in Arizona, DOES 1-30, XYZ CORPORATIONS 1-30, and BLACK AND WHITE PARTNERSHIPS 1-30,<br><br>Defendants. | CASE NO.<br><br>CV2013-003255<br><br><br><br><br><br><br><br><br>**COMPLAINT**<br>(Tort Non-Motor Vehicle) |

Plaintiffs Andrew Green and Staci Green, by and through counsel, as and for their

Complaint against Defendants named herein, allege as follows:

1

## INTRODUCTION
### (The Parties)

1.     Plaintiffs Andrew Green and Staci Green are, and were at all times material hereto, residents of Weatogue, Connecticut.

2.     Upon information and belief, Defendant Paul D. Wight, Jr. a/k/a Big Show® (hereinafter referred to as "Big Show") is, and was at all times material hereto, a resident of Miami, Florida.

3.     Big Show is, and was at all times material hereto, a professional wrestler and wrestling entertainer.

4.     Upon information and belief, Defendant World Wrestling Entertainment, Inc. (hereinafter referred to as "WWE") is, and was at all times material hereto, a Delaware corporation doing business in the City of Phoenix, Maricopa County, Arizona.

5.     Upon information and belief, WWE is an entertainment and media company, whose products and services include live and pay-per-view wrestling events at various venues around North America and internationally.

6.     Plaintiff Andrew Green (hereinafter referred to as "Green") was at all times material hereto employed by WWE as a road producer for digital production. His job was to conduct interviews with WWE wrestlers after wrestling matches/exhibitions. In the course of conducting interviews with wrestlers, Green asked questions of the wrestlers.

7.     Big Show was at all times material hereto an employee and/or agent of WWE for the purpose of appearing at and participating in live event and pay-per-view wrestling matches and exhibitions.

2

8.    Big Show was at all times material hereto acting within the course and scope of his employment and/or agency with WWE, or under the direction and control of WWE under such circumstances as to justify imputing responsibility to WWE for the negligent, reckless, and/or intentional acts complained of herein.

9.    WWE is legally responsible, by respondeat superior or otherwise, for the acts and omissions of its employees and/or agents, including Big Show, as set forth herein.

10.   Upon information and belief, Defendants John and Jane Does, XYZ Corporations, and Black and White Partnerships (hereafter "fictitious defendants") may be in some way responsible for the acts complained of herein. Plaintiffs do not presently know their true identities. Plaintiffs will seek leave of this Court to amend this Complaint to state the true names, capacities and relationships when it becomes known.

11.   Upon belief, all fictitious defendants were at all times material hereto organized and existing under the laws of Arizona and doing business in the State of Arizona and/or were foreign corporations, businesses, etc., qualified to do business within the State of Arizona, and actually doing business therein.

(Jurisdiction)

12.   The Superior Court in and for the County of Maricopa has jurisdiction over the subject matter of this action, and has personal jurisdiction over all parties listed above. The amount in controversy exceeds the minimum jurisdictional limits of the Court.

(Venue)

13.     Venue is proper in Maricopa County because the acts and omissions that give rise to Plaintiffs' cause of action occurred in Maricopa County, Arizona.

(General Allegations)

14.     Big Show's employment by WWE required him to act in a violent, erratic, and threatening manner both inside and outside of the wrestling ring relative to his appearances and participation in wrestling matches and exhibitions.

15.     WWE encouraged its wrestlers, including Big Show, to act in a violent and threatening manner both inside and outside of the wrestling ring relative to their appearances and participation in wrestling matches and exhibitions.

16.     WWE encouraged its wrestlers, including Big Show, to engage in violent and erratic behavior as part of their participation in staged wrestling events as a means of entertainment.

17.     WWE encouraged its wrestlers, including Big Show, to become emotional during videotaped interviews after wrestling matches and exhibitions.

18.     WWE routinely publicized the violent and erratic behavior of its wrestlers, including Big Show, both on the WWE website and elsewhere for the commercial benefit of WWE and profit for WWE.

19.     WWE knew or should have known of Big Show's propensity to engage in violence and violent confrontations outside of the wrestling arena.

20.     Upon information and belief, prior to the events alleged in this Complaint, WWE had suspended or terminated Big Show's employment because of his behavior,

4

including his engagement in violent and/or unlawful and/or improper activities outside of the wrestling venue.

21.    Upon information and belief, WWE had fined Big Show, or withheld compensation from Big Show, because of his behavior, including his engagement in violent and/or unlawful and/or improper activities outside of the wrestling venue.

22.    WWE knew or should have known that Big Show posed an undue risk of harm to others, including Green.

23.    WWE knew or should have known that participation in staged wrestling events was likely to cause Big Show to become emotionally unstable and volatile.

24.    WWE knew or should have known that after his participation in a staged wrestling event, Big Show was likely to be emotionally unstable and volatile.

25.    Upon information and belief, WWE instructs its wrestlers who are employees or agents of WWE to participate in and cooperate with regard to post match/exhibition videotaped interviews, including those conducted for digital media.

26.    WWE directed Green to interview wrestlers at the conclusion of their WWE sponsored matches and exhibitions as part of his job responsibilities.

27.    Green's interviews with WWE's wrestlers were recorded on videotape and regularly used by WWE on its website, on YouTube, and elsewhere for marketing and other purposes.

28.    Prior to wrestling matches and exhibitions, WWE personnel gather in production meetings where they discuss the planned events, and prepare a schedule that

includes designated interviews with the participating wrestlers by WWE's digital media crew, including Green.

29.     On or about Sunday, January 27, 2013, WWE staged a pay-per-view "Royal Rumble" event at the U.S. Airways Arena in Phoenix, Arizona (hereinafter referred to as the "Phoenix Rumble").

30.     On the day of the Phoenix Rumble, employees of WWE participated in a production meeting where they determined that Big Show would be interviewed on videotape for the WWE internet site at the conclusion of his match (hereinafter referred to as the "Phoenix Production Meeting").

31.     WWE employees present at the Phoenix Production Meeting included WWE's Chairman and Chief Operating Officer, Vince McMahon (hereinafter referred to as "McMahon") and Brian Pellegatto (hereinafter referred to as "Pellegatto"), one of the WWE Road Producers.

32.     Green did not participate in the Phoenix Production Meeting.

33.     After the Phoenix Production Meeting concluded, Pellegatto directed Green to approach Big Show for an interview immediately following his Match.

34.     Green had previously interviewed Big Show after an August, 2012 WWE "Summer Slam" event, at which time Big Show engaged in a pre-planned rant in response to Green's questioning.

35.     WWE took no action or precautions at the Phoenix Rumble to protect Green or to prevent Big Show from causing harm to Green.

6

36.    WWE wrestling events are staged and the outcome of matches is predetermined by WWE such that the wrestlers know, in advance, who the winner will be.

37.    The Phoenix Rumble featured, among other things, a wrestling match (hereinafter referred to as the "Match") between Big Show and Alberto Rodriguez a/k/a Alberto Del Rio (hereinafter referred to as "Del Rio"), which Del Rio won.

38.    About five minutes after the Match concluded, Big Show emerged from a staging area referred to by WWE as "Gorilla."

39.    Green asked Big Show to participate in the videotaped interview as planned at the Phoenix Production Meeting.

40.    Big Show refused to participate cursing at Green and declaring, with profanities, that he would not do any interview.

41.    Green advised Big Show that Eric Pankowski, a senior vice-president of WWE, (hereinafter referred to as "Pankowski") wanted Big Show to participate in the interview.

42.    In response, Big Show stated with the use of profanely indecent language that if Green wanted an interview then he would give him one, and to turn on the camera.

43.    Big Show went toward Green enraged, shouting obscenities, and waving his fist in Green's face. Big Show then grabbed Green by the collar and throat, striking Green in the face and backing him up against a trunk while declaring "You son of a bitch ... Are you having fun right now ... Don't ever come up to me again ... I don't give a shit who you are" (hereinafter referred to as the "Attack").

7

44.     The Attack was captured on videotape by the camera operator, Dustin Wallace (hereinafter referred to as "Wallace").

45.     Upon information and belief, Big Show was not feigning his emotional outburst at the time of the Attack.

46.     Upon information and belief, the Attack was observed by other WWE employees, including makeup personnel.

47.     Shortly after the Attack, Big Show returned in a much subdued state and told Green to redo the "interview." Big Show told Green to ask him to comment on the Match, and he said that he would respond by just walking away.

48.     Green, fearing any further confrontation with Big Show, complied with Big Show's request. Wallace filmed Big Show walking away after being asked to comment on the Match (hereinafter referred to as the "second interview").

49.     Shortly thereafter, Wallace located Pankowski and brought him to view the two videotapes that had just been made of Green and Big Show. Pankowski viewed both videotapes.

50.     Pankowski stated that the videotape of the Attack could not be used because of Big Show's repeated use of profanely indecent language.

51.     Pankowski told Wallace to discard the second interview which he described as useless.

52.     A second WWE official, Paul Michael Levesque, a/k/a Hunter Hearst Helmsley, a/k/a "Triple H," (hereinafter referred to as "Triple H") was summoned to view the videotape of the Attack.

53.     Upon information and belief, Triple H was, at all relevant times, WWE's Executive Vice-President of Talent and Live Events.

54.     After viewing the videotape of the Attack, Triple H stated that it could not be used because of Big Show's use of profanity.

55.     Triple H insisted that Green re-do the "interview."

56.     Although he was terrified of Big Show, Green felt compelled to do another interview (hereinafter referred to as the "third interview").

57.     Triple H asked Big Show to muster the same emotional level for the third interview as he had with the original shoot, that being the Attack. In response, Big Show said that he did not think he would be able to do that because his emotions in the original shoot had been real.

58.     Prior to the third interview, Big Show told Green not to worry because this time he would not strike him.

59.     Green conducted Big Show's third interview.

60.     Pankowski viewed the videotape of the third interview and decided it lacked the emotional impact of the original shoot.

61.     Pankowski decided to use the original shoot of the Attack with the profanity omitted.

62.     WWE posted the Attack on its website on Sunday, January 27, 2013.

63.     At the time WWE caused the Attack to be posted on its website, WWE knew or should have known that the Attack had not been staged.

64.    At the time WWE caused the Attack to be posted on its website, WWE knew or should have known that the Attack took place without Green's prior knowledge or consent.

65.    At the time WWE caused the Attack to be posted on its website, WWE knew or should have known that Green had suffered physical and mental injuries as a direct and proximate result of the Attack.

66.    While it continued to maintain the Attack on its website, WWE knew or should have known that the Attack had not been staged.

67.    While it continued to maintain the Attack on its website, WWE knew or should have known that the Attack took place without Green's prior knowledge or consent.

68.    While it continued to maintain the Attack on its website, WWE knew or should have known that Green had suffered physical and/or psychological, emotional and/or mental injuries as a direct and proximate result of the Attack.

69.    WWE did not cause the Attack to be removed from the internet until, at the soonest, Tuesday, January 29, 2013.

70.    The Attack received in excess of one hundred thousand page views while it was posted on the WWE website.

71.    WWE's purpose for having the Attack posted on the internet was for the commercial benefit of WWE and profit for WWE.

72.   WWE intentionally posted and maintained the video on the WWE website even though WWE knew or should have known that it would cause Green to be humiliated and suffer other injuries.

73.   The next day, January 28, 2013, Green was at the Las Vegas venue for that evening's WWE event, and advised Triple H, Pankowski, and Mark Carrano (of WWE's Talent Relations Department) that he did not want to work with Big Show and wanted WWE to keep Big Show away from him.

74.   On January 28, 2013, Triple H verbally apologized to Green for the Attack.

75.   WWE personnel told Green that Big Show wanted to apologize for the Attack.

76.   Green informed WWE that he did not wish to have any further contact with Big Show.

77.   Green informed WWE that he did not want to be anywhere near Big Show.

78.   WWE knew or should have known that Big Show caused Green physical and mental harm.

79.   By its actions, WWE intentionally created a dangerous condition that made it more likely for Green's injuries to occur.

80.   At the time of the Attack, Big Show intended to assault, batter and injure Green.

81.   At the time of the Attack, Big Show was an employee and/or agent of WWE.

82.   Big Show intended for Green to suffer injuries as a result of the Attack.

11

83.   After the Attack, WWE knew or should have known that Green remained frightened of Big Show and of any further contact with Big Show.

84.   After the Attack, WWE did not take any appropriate or necessary action to prevent Big Show from attempting to contact Green or to protect Green against further contact with Big Show.

85.   Over the two days following the Attack, Big Show repeatedly sought out Green, with the knowledge of WWE personnel.

86.   Over the two days following the Attack, Big Show repeatedly attempted to confront Green, with the knowledge of WWE personnel.

87.   Over the two days following the Attack, Big Show continued to intimidate Green, with the knowledge of WWE personnel.

88.   On January 29, 2013, Green advised his direct supervisor, Rob Bernstein, that he was uncomfortable working around Big Show and the other wrestlers, nervous, and had "a ton of anxiety" as a result of the Attack and Big Show's subsequent conduct, and he could no longer remain at the wrestling venue.

89.   On January 29, 2013, Stephanie McMahon, WWE's Executive Vice President-Creative, contacted Green. Green advised her that he was afraid to work and scared that he would be confronted by Big Show or another wrestler.

90.   Bernstein offered Green an "800" telephone number to call for assistance.

91.   Green was unable to continue working on January 29, 2013, because of his mental condition resulting from the Attack, Big Show's subsequent conduct, and WWE's failure to take appropriate and necessary action related to the foregoing.

COUNT ONE
(Negligence-Big Show)

92.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

93.   Big Show owed Green a duty of reasonable care not to conduct himself in a manner such that he would cause harm to Green.

94.   Big Show's Attack upon Green was intentional and malicious.

95.   Big Show intended to cause injuries to Green as a result of the Attack.

96.   Big Show knew or should have known that he posed a physical and mental threat to Green.

97.   Big Show knew or should have known that his conduct involved an unreasonable risk of causing physical and mental harm to Green.

98.   Big Show knew that there was a substantial likelihood that Green would suffer injuries from the Attack.

99.   Big Show breached his duty of care to Green by his conduct as set forth herein.

100.   Big Show's breach of duty is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

COUNT TWO
(Assault-Big Show)

101.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

102.   The Attack by Big Show upon Green was intentional.

13

103. Big Show intended to cause harm or offensive contact with Green.

104. Big Show acted with malice when he attacked Green.

105. Big Show intended to cause Green apprehension of an immediate harmful or offensive contact.

106. Big Show caused Green apprehension of an immediate harmful or offensive contact.

107. Big Show intended for Green to suffer injuries as a result of the Attack.

108. Big Show's conduct as set forth herein is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT THREE
### (Battery-Big Show)

109. Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

110. Big Show intended to cause a harm or offensive contact with Green.

111. Big Show intended to cause Green apprehension of an immediate harmful or offensive contact.

112. Big Show caused a harmful or offensive contact with Green.

113. Big Show intended for Green to suffer injuries as a result of the Attack.

114. As set forth herein, Green suffered injuries as a result of the Attack.

115. Big Show's conduct as set forth herein is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT FOUR
### (Intentional Infliction of Emotional Distress-Big Show)

116.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

117.   Big Show acted in an extreme and outrageous manner toward Green.

118.   Big Show's conduct was either intentional or reckless.

119.   Big Show's conduct caused Green to suffer severe emotional distress.

120.   Big Show's conduct as set forth herein is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT FIVE
### (Negligent Infliction of Emotional Distress-Big Show)

121.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

122.   Big Show knew or should have known that his conduct involved an unreasonable risk of causing emotional distress to Green.

123.   Big Show knew or should have known that the emotional distress to Green would likely result in illness or bodily injury.

124.   Big Show's conduct caused Green to suffer severe emotional distress, anxiety, and upset that manifested itself in physical injury, harm, and illness.

125.   Big Show's conduct as set forth herein is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT SIX
### (Negligence-WWE)

126.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

127.   WWE owed Green a duty of reasonable care not to conduct itself in a manner such that it would cause harm to Green.

128.   WWE knew or should have known that posting the Attack on the internet involved an unreasonable risk of causing mental harm to Green.

129.   WWE knew or should have known that maintaining the Attack on the internet involved an unreasonable risk of causing mental harm to Green.

130.   WWE breached its duty of care to Green by its actions as set forth herein.

131.   WWE's breach of duty is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT SEVEN
### (Invasion of Privacy-WWE)

132.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

133.   WWE knowingly, intentionally and/or recklessly caused the Attack to be posted on the Internet.

134.   WWE knowingly, intentionally and/or recklessly caused the Attack to be maintained on the Internet.

135.   WWE's treatment and publication of Green through advertising, marketing and promotion of its internet presence is highly offensive to a reasonable person.

16

136.    WWE's actions were extreme and outrageous.

137.    WWE had knowledge of or acted in a reckless disregard to the invasion of privacy in which Green was placed.

138.    WWE knew that there was a substantial likelihood that Green would suffer injuries from the posting of the videotape on the Internet.

139.    WWE intended to cause injury to Green by posting the videotape on the Internet.

140.    WWE's actions caused Green to suffer further mental injury, embarrassment, ridicule, and humiliation.

141.    WWE's conduct as set forth herein is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

COUNT EIGHT<br>(Intentional Infliction of Emotional Distress-WWE)

142.    Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

143.    WWE acted in an extreme and outrageous manner toward Green.

144.    WWE's conduct was either intentional or reckless.

145.    WWE's conduct caused Green to suffer severe emotional distress.

146.    WWE's conduct as set forth herein is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT NINE
### (Negligent Infliction of Emotional Distress-WWE)

147.    Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

148.    WWE knew or should have known that its conduct involved an unreasonable risk of causing emotional distress to Green.

149.    WWE knew or should have known that the emotional distress to Green would likely result in illness and/or emotional or bodily injury.

150.    WWE's conduct caused Green to suffer severe emotional distress, anxiety, and upset that manifested itself in physical and/or emotional injury, harm, and illness.

151.    WWE's conduct as set forth herein is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT TEN
### (Commercial Appropriation of Likeness-WWE)

152.    Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

153.    WWE used Green's identity and image concerning the attack to its commercial advantage, without Green's consent, and this use resulted in Green being injured.

154.    WWE's conduct as set forth herein is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT ELEVEN
### (Unjust Enrichment/Restitution-WWE)

155.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

156.   WWE has been unjustly enriched by its wrongful conduct, to the detriment of Green.

157.   Green is entitled to restitution and reimbursement of the profits and gains WWE has received through its wrongful conduct and exploitation of Green.

## COUNT TWELVE
### (Intentional Tort-WWE)

158.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

159.   WWE intentionally posted the videotape on the Internet.

160.   WWE knew that there was a substantial likelihood that Green would suffer injuries from the posting of the videotape.

161.   WWE intended for Green to suffer injuries, including humiliation, as a result of the posting of the videotape on the Internet.

162.   WWE's actions caused Green to suffer the injuries alleged herein.

## COUNT THIRTEEN
### (Accounting/Constructive Trust-WWE)

163.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

164.   WWE exploited Green for its own commercial gain without providing Green any equitable share of the profits or royalties nor any restitution or reimbursement for monies rightfully owed to Green.

165.   Green is entitled to (1) an accounting; (2) a constructive trust; and, (3) an equitable distribution of profits from the use of his image and likeness in advertising, marketing, and promotions.

### COUNT FOURTEEN
### (Negligent Hiring-WWE)

166.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

167.   WWE had a duty to employ only those people who do not pose an unreasonable risk of harm to others.

168.   WWE breached its duty by employing Big Show, an improper person.

169.   WWE knew or should have known that employing Big Show involved an unreasonable risk of causing injury to others.

170.   WWE employing Big Show resulted in harm to Green.

171.   WWE employing Big Show is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

### COUNT FIFTEEN
### (Negligent Retention-WWE)

172.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

173.   WWE had a duty to terminate the employment of people who posed an unreasonable risk of harm to others.

174.   WWE breached its duty by retaining Big Show, an improper person.

175.   WWE knew or should have known that retaining Big Show involved an unreasonable risk of causing injury to others.

176.   WWE retaining Big Show resulted in harm to Green.

177.   WWE retaining Big Show is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT SIXTEEN
### (Negligent Training/Supervision-WWE)

178.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

179.   WWE had a duty to properly train and supervise Big Show to properly deal with confrontations inevitable to his position and to not cause harm to others.

180.   WWE breached its duty by failing to properly train and supervise Big Show.

181.   WWE failed to exercise proper control over Big Show to prevent harm to Green.

182.   WWE knew or should have known that failing to properly train and supervise Big Show involved an unreasonable risk of causing injury to others.

183.   WWE gave improper or ambiguous orders to Big Show.

184.   WWE failed to make proper regulations of Big Show.

185.   WWE permitted or failed to prevent negligent and other tortious conduct by Big Show.

186.   WWE failing to properly train and supervise Big Show is a direct and proximate cause of injuries, losses, and damages to Plaintiffs.

## COUNT SEVENTEEN
### (Compensatory Damages)

187.   Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

188.   As a direct and proximate result of Defendants' actions and failures to act as set forth herein, Plaintiff Andrew Green suffered the following foreseeable injuries, losses, and damages:

a.     Green suffered personal injuries, including physical, emotional, and psychological, the full extent of which are yet unknown. Certain of these injuries to Green are chronic, irreversible, and permanent in nature.

b.     Green suffered great bodily pain and mental anguish, discomfort, and disability. This will continue into the future and permanently as Green's condition is chronic, irreversible, and permanent in nature.

c.     Green incurred reasonable expenses for necessary medical care and treatment, the exact amount of which is presently unknown, but which will be proven at the time of trial. Green will continue to incur reasonable expenses for necessary medical care and treatment into the future and permanently.

d.    Green suffered monetary damages in the form of costs and expenses for transportation while traveling to receive necessary medical care and treatment, the exact amount of which is presently unknown, but which will be proven at the time of trial. Green will continue to incur these expenses for transportation to receive necessary medical care and treatment into the future and permanently.

e.    Green suffered monetary damages in the form of a loss of income, benefits, and of earning capacity, the exact amount of which is presently unknown, but which will be proven at the time of trial. This loss of income, benefits, and of earning capacity will continue into the future and permanently.

f.    Green lost the present capacity to earn a living. Green is presently unable to accurately estimate such loss of earning capacity and, therefore, will prove such a loss in an ascertainable amount upon the trial in this matter.

g.    Green's future earning capacity has been diminished. Green is presently unable to accurately estimate such loss of future earning capacity and, therefore, will prove such a loss in an ascertainable amount upon the trial in this matter.

h.    Green has been deprived of the full enjoyment of life, and the same will continue into the future and permanently.

i.    Green suffered intimidation, fright, humiliation, and embarrassment.

j.    Green suffered physical manifestation of emotional distress including sleeplessness.

23

## COUNT EIGHTEEN
### (Loss of Consortium)

189.    Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

190.    As a direct and proximate result of Defendants' actions and failures to act as set forth herein, Plaintiff Staci Green was and continues to be deprived of the society, companionship, assistance, services, and enjoyment of Plaintiff Andrew Green, her husband, this being a foreseeable consequence of Defendants' conduct.

## COUNT NINETEEN
### (Punitive/Exemplary Damages)

191.    Plaintiffs hereby incorporate by this reference all of the previous paragraphs and allegations of this Complaint as if restated here in full.

192.    Defendant Big Show intended to cause injury.

193.    Defendant Big Show's wrongful conduct was motivated by spite or ill will.

194.    Defendant WWE acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injure the rights of others.

195.    Defendant WWE intentionally created dangerous conditions that made it substantially likely Green's injuries would occur.

196.    Both Defendant Big Show and Defendant WWE consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others.

1

2   WHEREFORE, Plaintiffs Andrew Green and Staci Green demand judgment

3   against Defendants named herein for damages in an amount to be proven at trial that fully

4   and adequately compensates Plaintiffs, for punitive and exemplary damages against all

5   Defendants, for an accounting of profits; for restitution/equitable distribution of

6   commercial profits; for constructive trust; for all costs and expenses incurred herein,

7   including reasonable attorneys' fees, for pre-judgment and post-judgment interest at the

8   maximum rate allowed by law, and for such other and further relief to which Plaintiffs

9   may be entitled either at law or in equity, or as the Court may deem just in the premises.

10      DATED this 5th day of April 2013.

11                                          MUELLER LAW GROUP, P.A.

12

13

14                                          _____
                                            George E. Mueller
15

16

17

18

19

20

21

22

23

24

25

MICHAEL K. JEANES, CLERK
BY ~~Plowe~~ DEP
FILED

13 APR -5 PM 4: 39

1

2   BERNSTEIN CHERNEY, L.L.P.
    777 Third Avenue
3   New York, NY 10017
    Telephone: (212) 381-9684
4   Facsimile: (646) 304-9535
    E-mail: hbernstein@bernsteincherney.com
5   Hartley Bernstein (1050178 NY) (Pro Hac Vice AZ)

6
    MUELLER LAW GROUP, P.A.
7   2141 East Camelback Road, Suite 100
    Phoenix, Arizona 85016
8   Telephone: (602) 222-9800
    Facsimile: (888) 411-1236
9   E-mail: mschaefer@muellerlawgroup.com
    George E. Mueller (015209)
10

11  Attorneys for Plaintiffs

12           **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
                **IN AND FOR THE COUNTY OF MARICOPA**
13

14  ANDREW GREEN and             |    CASE NO.
    STACI GREEN, Husband and Wife, |
15                               |
           Plaintiffs,            |    CV 2013 - 003255
16                               |
         v.                       |
17                               |
    PAUL D. WIGHT, JR., a/k/a BIG |
18  SHOW®, an individual, WORLD   |
    WRESTLING ENTERTAINMENT,      |
19  INC., a foreign corporation doing |
    business in Arizona, DOES 1-30, XYZ |
20  CORPORATIONS 1-30, and BLACK  |
    AND WHITE PARTNERSHIPS 1-30,  |
21                               |
           Defendants.            |    **CERTIFICATE ON**
22  _____ |    **COMPULSORY ARBITRATION**

23         The undersigned certifies that he knows the dollar limits and any other limitations

24  set forth by the Local Rules of this Superior Court, and further certifies that this case is

**not** subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

DATED this 5th day of April, 2013.

MUELLER LAW GROUP. P.A.

George E. Mueller

ORIGINAL of the foregoing
being filed with the
Clerk of the Court.

COPY of the foregoing
hand-delivered this 5th day of April, 2013, to:

Maricopa County Superior Court
Arbitration Desk
201 W. Jefferson, 4th Floor
Phoenix, AZ, 85003

By _____
     Megan Schaefer, Certified Paralegal

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
Kelle Dyer
4/9/2013 9:38:00 AM
Filing ID 5199053

MUELLER LAW GROUP, P.A.
2141 East Camelback Road, Suite 100
Phoenix, Arizona 85016
Telephone: (602) 222-9800
Facsimile: (888) 411-1236
E-mail: mschaefer@muellerlawgroup.com

George E. Mueller (015209)
Attorney for Plaintiffs

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| ANDREW GREEN and STACI GREEN, Husband and Wife, | CASE NO. CV2013-003255 |
| Plaintiffs, | |
| v. | |
| PAUL D. WIGHT, JR., a/k/a BIG SHOW®, an individual, WORLD WRESTLING ENTERTAINMENT, INC., a foreign corporation doing business in Arizona, DOES 1-30, XYZ CORPORATIONS 1-30, and BLACK AND WHITE PARTNERSHIPS 1-30, | |
| Defendants. | **MOTION TO ASSOCIATE COUNSEL PRO HAC VICE** |

George Mueller, pursuant to Rule 38(a), Ariz. R. Sup. Ct., moves the court to associate Hartley Bernstein as counsel pro hac vice in this action. In support of this motion and pursuant to Rule 38(a)(3)(C), the following original documents are attached:

1. Verified Application to Appear Pro Hac Vice;

2. Certificate of Good Standing; and,

3. State Bar of Arizona Notice of Receipt of Complete Application.

1

1

2          George Mueller hereby agrees to serve as local counsel in this matter and accepts

3    the responsibilities detailed in Rule 39(a)(2), Ariz R. Sup. Ct.

4          DATED this 9th day of April, 2014.

5                                              MUELLER LAW GROUP, P.A.

6

7                                              /s/ George Mueller
8                                              George E. Mueller

9

10   By: /s/ Megan Schaefer
         Megan Schaefer, Certified Paralegal
11

12

13

14

15

16

17

18

19

20

21

22

23

24

                                           2



## Appellate Division of the Supreme Court
## of the State of New York
## Second Judicial Department

I, Aprilanne Agostino,    Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that    Hartley Todd Bernstein    was duly licensed and admitted to practice as an Attorney and Counselor-at-Law in all the courts of the State, according to the laws of the State and the court rules and orders, on the  2 nd   day of        March 1977, has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors-at-Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand and affixed the seal of said Appellate Division on  March 06, 2013.

Clerk of the Court

| | |
|---|---|
| 1 | **Maricopa County Superior Court** |

| | | |
|---|---|---|
| 2 | Andrew Green, ) | |
| | Plaintiff ) | |
| 3 | ) | CASE # **Not provided** |
| | v. ) | |
| 4 | ) | SBA App #1007434 |
| | Paul Wight aka Big Show et al, ) | |
| 5 | Defendant. ) | **NOTICE OF RECEIPT OF** |
| | ) | **COMPLETE APPLICATION** |

6

7  NOTICE IS HEREBY given by THE STATE BAR OF ARIZONA that it has received the verified application and fee from Hartley Bernstein.

8  In addition to this application, applicant has made the following applications to appear pro hac
9  vice, pursuant to Rule38 (a), within the previous three (3) years:

| Title of Matter | Court/Agency | Date | Granted? |
|---|---|---|---|
10

11

12  Exhibit A, the original verified application and Exhibit B, the original Certificate(s) of Good Standing are attached hereto.

13  DATED this 26rd day of March 2013

14

15  _____
    Mirna Lerma
16  Resource Center
    State Bar of Arizona

17

18  Original Mailed on this 26rd day of March 2013 to:

19  George E Mueller
20  Mueller Law Group PA
    2211 E Camelback Rd Ste 307
21  Phoenix, AZ 85016-9048

22

23