John T. Gilbert, #004555
ALVAREZ & GILBERT, PLLC
Northsight Financial Center
14500 N. Northsight Blvd., Suite 216
Scottsdale, Arizona 85260
(602) 263-0203 (phone)
(480) 686-8708 (facsimile)
jgilbert@alvarez-gilbert.com

Jerry S. McDevitt (pro hac vice)
Curtis B. Krasik (pro hac vice)
K&L GATES, LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
(412) 355-6500 (phone)
(412) 355-6501 (facsimile)
jerry.mcdevitt@klgates.com

Attorneys for Defendant
World Wrestling Entertainment, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Andrew Green and Staci Green**, husband and wife,<br><br>　　　　Plaintiffs,<br>　vs.<br><br>**Paul D. Wight, Jr. a/k/a Big Show**, an individual, **World Wrestling Entertainment, Inc.**, a foreign corporation doing business in Arizona, Does 1-30, XYZ Corporations 1-30, and Black and White Partnerships 1-30,<br><br>　　　　Defendants. | **Case No. 2-13-cv-00967-GMS**<br><br>**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND BY DEFENDANT WORLD WRESTLING ENTERTAINMENT, INC.**<br><br>**(Oral Argument Requested)** |

Defendant World Wrestling Entertainment, Inc. ("WWE") respectfully submits this response in opposition (the "Opposition") to Plaintiffs' Motion to Remand.

## I. INTRODUCTION

By their Motion to Remand and Amended Complaint, Plaintiffs have attempted to manipulate their pleadings in form, but not in substance, for the purpose of avoiding this Court's jurisdiction. They have failed.

Conceding that their original complaint was completely preempted by federal copyright law, Plaintiffs admit in their Motion to Remand that they amended their complaint to delete the claims against WWE for invasion of privacy, commercial appropriation of likeness, unjust enrichment/restitution, and accounting/constructive trust – each of which was expressly predicated on WWE's posting of video footage of Plaintiff Andrew Green's interview of Defendant Paul Wight (the "Interview") on the internet.[1] In doing so, Plaintiffs evidently believed that they had eliminated WWE's basis for removal under the copyright preemption doctrine.

The problem for Plaintiffs, however, is that they did not delete from the Amended Complaint any of the numerous factual allegations regarding WWE's posting of video footage of the Interview on the internet (*see* Amended Complaint ¶¶ 62-73), which are incorporated by reference into each of Plaintiffs' claims for relief. Moreover, at least four of Plaintiffs' causes of action against WWE – Negligence (Count Six), Intentional Infliction of Emotional Distress ("IIED," Count Seven), Negligent Infliction of Emotional Distress ("NIED," Count Eight), and Intentional Tort (Count Nine) – continue to be expressly based on the internet posting allegations. Significantly, Plaintiffs even concede in their Motion to Remand that the "Amended Complaint seeks damages based upon the Attack [allegedly by Wight against Mr. Green] ***and the subsequent emotional damages suffered by Green as a result of WWE posting the Attack on the Internet***." *See* Motion to Remand at 5 (emphasis added). It, therefore, is uncontested that Plaintiffs' claims against WWE continue to be predicated in large part on WWE's posting the video footage of the Interview on the internet.

---

[1] Plaintiffs also erroneously claim that their original Complaint asserted claims against WWE for, among other things, assault and battery. This is false – no assault or battery claim ever has been asserted, and is not now asserted, against WWE.

2

1  Because Plaintiffs admittedly continue to seek damages for WWE's mere exploitation of its
2  exclusive right as a copyright owner to publicly display its copyrighted work (i.e., the video
3  footage of the interview on the internet), Plaintiffs' claims for Negligence, IIED, NIED, and
4  Intentional Tort remain preempted by Section 301(a) of the Copyright Act. Accordingly, this
5  Court has subject matter jurisdiction over this case as a matter of law.

## II. ARGUMENT

### A. WWE Properly Removed this Action Under the Complete Preemption Doctrine

#### 1. Copyright Law Is Completely Preemptive, Which Confers Federal Subject Matter Jurisdiction for Removal

It is well-established in the Ninth Circuit, that "the 'complete preemption doctrine' provides an exception to the general proposition" that a case may not be removed to federal court on the basis of a federal defense. *In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005). Despite attempting to muddle the issue in their Motion to Remand, Plaintiffs ultimately concede that "[u]nder the 'artful pleading' doctrine, a well-pleaded state law claim presents a federal question when a federal statute has completely preempted that particular area of law. *See* Motion to Remand at 8. Plaintiffs further concede, as they must, that "[a] complaint containing a completely preempted claim may be removed to district court under § 441 [sic]." *See* Motion to Remand at 8. *See also Hall v. North American Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007) ("A complaint containing a completely preempted claim may be removed to district court under § 1441.").

Unable to dispute the vitality of the complete preemption doctrine, on which the removal of this case was predicated, Plaintiffs are left to argue that copyright law is not a federal statute to which the complete preemption doctrine applies. Every Federal Circuit to address the issue, however, has uniformly concluded that state law claims preempted by § 301 of the Copyright Act are completely preempted such that federal subject matter jurisdiction exists over those claims. *See, e.g.*, *Globe-Ranger Corp. v. Software AG*, 691 F.3d 702, 705 (5th Cir. 2012); *Ritchie v. Williams*, 395 F.3d 283, 285-87 (6th Cir. 2005); *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 303-05 (2d Cir. 2004);

*Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 230-33 (4th Cir. 1993). There is no contrary authority.

The U.S. Supreme Court has made clear that in determining whether a federal statute is completely preempted, "[t]he proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003); *see also Ritchie*, 395 F.3d at 287 ("[The Supreme Court] holds [in *Anderson*] that a state law usury claim against a national bank is 'completely preempted' and removable when Congress vests exclusive jurisdiction in the federal courts after broadly preempting usury claims under the National Bank Act. The rationale is that in such situations the federal statutory laws 'superseded both the substantive and remedial provision of state' law creating a strong form of federal preemption – presumably because of the additional need for a strong form of national uniformity implied by Congress when it made federal court jurisdiction exclusive after broadly preempting state law.").

Applying this standard, the Second, Fourth, Fifth and Sixth Circuits have concluded that Congress intended the Copyright Act to entirely displace state law. *See Briarpatch*, 373 F.3d at 305 ("Given the Supreme Court's approach in *Anderson*, we conclude that it means to extend the complete preemption doctrine to any federal statute that both preempts state law and substitutes a federal remedy for that law, thereby creating an exclusive federal cause of action. The Copyright Act does just that.") (citations omitted); *see also GlobeRanger*, 691 F.3d at 706 ("We hold that Section 301(a) of the Copyright Act completely preempts the substantive field."); *Ritchie*, 395 F.3d at 286-87 ("Most recently, the Second Circuit analyzed the [Copyright] Act in light of the *Anderson* case above and found that the doctrine of complete preemption clearly applies. . . . We agree with the Second and Fourth Circuits. Congress has indicated that 'national uniformity' in the strong sense of 'complete preemption' is necessary in this field."); *Rosciszewski*, 1 F.3d at 231-32 ("[I]n deciding whether the preemptive force of the Copyright Act is so extraordinary that a state-law claim, preempted by § 301(a), becomes federal in nature, the focus of our inquiry must be

congressional intent. . . . We likewise conclude that Congress intended that actions pre-empted by § 301(a) of the Copyright Act be regarded as arising under federal law.").

Specifically, these Circuits found the Copyright Act to be completely preemptive for two reasons. First,

> Congress employed a broad mandatory preemption provision for causes of action equivalent to copyright claims. *See* 17 U.S.C.A. § 301(a). Concerning this provision, Congress has stated, "The declaration . . . in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively." H.R. Rep. No. 1476, 94th Cong., 2d Sess. 130 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5746. Thus, Congress has clearly indicated that state-law claims which come within the subject matter of copyright law and which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law . . . should be litigated only as federal copyright claims.

*Rosciszewski*, 1 F.3d at 232; *see also Ritchie*, 395 F.3d at 285 ("Section 301 of the Copyright Act broadly preempts state law claims, and federal law vests exclusive jurisdiction over such preempted copyright claims in the federal courts.").

Second, 28 U.S.C. § 1338(a) provides, in pertinent part, that "the district courts shall have original jurisdiction of any civil claims arising under any Act of Congress relating to . . . copyrights . . . Such jurisdiction shall be exclusive of the courts of the states in . . . copyright cases." Thus,

> [t]he Copyright Act is unusually broad in its assertion of federal authority. Rather than sharing jurisdiction with the state courts as is normally the case, the statute expressly withdraws from the state courts any jurisdiction to enforce the provisions of the Act and converts all state common or statutory law "within the general scope of copyright" into federal law to be uniformly applied throughout the nation.

*Ritchie*, 395 F.3d at 286; *see also Rosciszewski*, 1 F.3d at 232 ("The grant of exclusive jurisdiction to the federal courts over civil actions arising under the Copyright Act, combined

with the preemptive force of § 301(a), compels the conclusion that Congress intended that state law actions preempted by § 301(a) of the Copyright Act arise under federal law. Accordingly, we hold that the preemptive force of § 301(a) of the Copyright Act transforms a state-law complaint asserting claims that are preempted by § 301(a) into a complaint stating a federal claim for purposes of the well-pleaded complaint rule. Since claims preempted by § 301(a) arise under federal law, removal of actions raising these claims to federal district court is proper.").

This reasoning equally applies here. Given the Copyright Act's broad mandatory preemption for any causes of action within the general scope of copyright and the exclusive federal jurisdiction over copyright claims, it is evident that Congress intended the Copyright Act to entirely displace equivalent state law. As such, the Copyright Act is completely preemptive, as uniformly found by every Circuit to address the issue. This Court, therefore, plainly has federal question subject matter jurisdiction over this lawsuit.

### 2. **Plaintiffs' Argument that Copyright Law Is Not Completely Preempted Is Unfounded and Unavailing**

Forced to acknowledge the foregoing precedent, Plaintiffs attempt to diminish its import by inventing a purported circuit split based solely on an unpublished Third Circuit opinion in *Bd. of Chosen Freeholders of Cnty. Of Burlington v. Tombs*, 215 Fed. 80, 82 (3d Cir. 2006) supposedly holding to the contrary. Plaintiffs assert that "the Third Circuit has expressly declined" to endorse the notion that copyright law is completely preempted. *See* Motion to Remand at 9. This assertion is based on a misreading of *Tombs*, or perhaps blind reliance on a commentator's misreading of *Tombs* in the Copyright Litigation Handbook § 10:1 (2d ed.). As the Fifth Circuit cogently explained with regard to this very issue in *GlobeRanger*:

> One commentator notes, citing *Tombs*, that the Third Circuit has "rejected complete preemption in the copyright context." Copyright Litigation Handbook § 10:1 (2d ed.). It is correct that *Tombs* rejected the application of preemption to a specific cause of action. *Tombs* did not reject, however, complete preemption generally under the Copyright Act.

6

*GlobeRanger*, 691 F.3d at 706 n.2. Indeed, *Tombs* merely held that "[f]ederal copyright law does not create an exclusive cause of action for access to public records and does not set forth procedures and remedies governing such actions. Simply stated, federal copyright law does not wholly displace state statutory or common law rights to public records and therefore cannot be said to completely preempt Tombs' threatened claim." *Tombs*, 215 Fed. Appx. at 82. Thus, *Tombs* stands for nothing more than the unremarkable – and narrow – proposition that a claim under New Jersey's Open Public Records Act is not preempted by copyright law. It, therefore, has no application here.

Equally unavailing is Plaintiffs' suggestion that "[t]he Ninth Circuit has clearly signaled its reluctance to add federal copyright clams to those limited statutes which compel complete preemption." *See* Motion to Remand at 11 (citing *Bierman v. Toshiba Corp.*, 473 Fed. Appx. 756 (9th Cir. 2012)). The apparent basis for Plaintiffs' assertion is that "while the District Court seemingly signaled its approval of the complete preemption doctrine in *Bierman*, on appeal the Ninth Circuit declined the District Court's tacit invitation to extend the concept to federal copyright law, instead affirming the District Court's decision on other grounds." *Id.* at 10-11. This assertion is demonstrably false.

As discussed in WWE's Notice of Removal, *Bierman* was removed to federal court on the grounds that the state law claims at issue were completely preempted by the Copyright Act. *See Bierman v. Toshiba Corp.*, No. C-10-4203 MMC, 2010 WL 4716879, at *1 (N.D. Cal. Nov. 12, 2010). In fact, the district court specifically cited *Ritchie, Briarpatch*, and *Rosciszewski* and stated, "[t]he Court finds the reasoning of such cases to be persuasive." *Id.* at *1 n.1. On appeal, the Ninth Circuit did not take issue with the district court's assertion of subject matter jurisdiction on the basis of complete preemption under the Copyright Act or its dismissal of two causes of action as preempted by Section 301 of the Copyright Act. Meanwhile, the concurring opinion by Senior Circuit Judge Wallace noted that while the majority did not directly address the propriety of the district court's federal subject matter jurisdiction to dismiss the claims as preempted, he "would have joined the Second, Fourth, and Sixth Circuits in holding that claims preempted by § 301(a) of the Copyright Act are

7

regarded as arising under federal law, and therefore can support removal." *See Bierman*, 473 Fed. Appx. at 757-58.

Contrary to Plaintiffs' assertion that the Ninth Circuit affirmed the district court decision on other grounds, as noted in Senior Circuit Judge Wallace's concurrence, the Ninth Circuit was not asked to review the district court's merits decision dismissing portions of two causes of action as preempted because the plaintiff did not appeal that decision. *See Bierman* 473 Fed. Appx. at 758. The only issue on appeal (by the defendant) was whether the district court abused its discretion in declining to exercise supplemental jurisdiction, in the absence of any claims subject to copyright preemption, over the remaining state law claims. Indeed, the majority opinion made clear that it "express[ed] no view as to whether there was any federal subject matter jurisdiction in the first place for the district [court] to exercise federal jurisdiction over the two claims which were dismissed." *Bierman*, 473 Fed. Appx. at 757 n.1. By "express[ing] no view" in this regard, it is utterly baseless for Plaintiffs to claim that the Ninth Circuit "signaled" anything about whether copyright law is completely preempted. The only statement from the Ninth Circuit as to whether copyright law is completely preempted is Senior Circuit Judge Wallace's concurrence emphatically finding that it is.

Finally, as regards Plaintiffs' assertion that the facts in *Bierman* are "remarkably similar to this case" and supposedly "[n]o discernible issues remain which are arguably based upon federal copyright law," this again is demonstrably false. As noted at the outset, Plaintiffs ignore that the Amended Complaint continues to assert numerous factual allegations regarding WWE's posting of the video footage of the Interview on the internet (*see* Amended Complaint ¶¶ 62-73) and Plaintiffs' claims for Negligence, IIED, NIED, and Intentional Tort continue to be expressly based on WWE's posting of the video footage of the Interview on the internet. Plaintiffs even concede in their Motion to Remand that the "Amended Complaint seeks damages based upon the Attack [allegedly by Wight against Mr. Green] ***and the subsequent emotional damages suffered by Green as a result of WWE posting the Attack on the Internet***." *See* Motion to Remand at 5 (emphasis added). Thus, unlike *Bierman* where all of the preempted claims were dismissed, Plaintiffs' claims against

8

WWE continue to be predicated in large part on WWE's posting the video footage of the Interview on the internet which are preempted by copyright law. The facts of *Bierman*, therefore, are completely inapposite.

B. **Plaintiffs' State Law Claims Predicated on WWE Allegedly Posting and Maintaining on Its Website Video Footage of the Interview Are Preempted By Federal Copyright Law**

Plaintiffs' Motion to Remand demonstrates a fundamental misunderstanding of copyright preemption. Plaintiffs assert in their Motion to Remand that "[t]his action centers upon the unauthorized, violent Attack upon Green, the physical and emotional damages that it caused, and the emotional distress suffered by Green once that Attack was posted by WWE on the Internet. Those claims are grounded in tort not in copyright law. . . . WWE has distorted Plaintiffs' claims in order to create the impression that this action involves federal copyright claims which are preempted by federal courts." *See* Motion to Remand at 5. While in reality WWE has distorted nothing, it does not matter for purposes of copyright preemption whether Plaintiffs' claims ostensibly are grounded in tort.

Section 301(a) of the Copyright Act prohibits States –by statute or common law – from regulating in the area of copyright. *See* 17 U.S.C. § 301(a). According to the Ninth Circuit,

> Section 301 of the [Copyright] Act provides for exclusive jurisdiction over rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in the Act. "The intention of Section 301 is to preempt and abolish any rights under the common law or statutes of a State that are equivalent to copyright and that extend to works within the scope of Federal copyright law."

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1152 (9th Cir. 2010). To that end, the Ninth Circuit has

> adopted a two-part test to determine whether a state law claim is preempted by the Act. We must first determine whether the "subject matter" of the state law claim falls within the subject

9

> matter of copyright as described in 17 U.S.C. §§ 102 and 103.
> Second, assuming that it does, we must determine whether the
> rights asserted under state law are equivalent to the rights
> contained in 17 U.S.C. § 106, which articulates the exclusive
> rights of copyright holders.

*Id.* at 1152-53 (quoting *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006)). "A claim asserted to prevent nothing more than the reproduction, performance, distribution, or display of a dramatic performance captured on film is subsumed by copyright law and preempted." *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1924 (1996), *cited with approval in Jules Jordan Video*, 617 F.3d at 1154 & *Laws*, 448 F.3d at 1142-43. Here, Plaintiffs' state law claims for negligence, IIED, NIED, and intentional tort are expressly predicated on WWE's display of the video footage of the Interview on its website. Such claims, therefore, directly impinge upon WWE's exclusive rights under Section 106 of the Copyright Act to, among other things, perform and/or display the copyrighted work publicly. As such, those claims are preempted.

### 1. The Subject Matter of Plaintiffs' Negligence, IIED, NIED and Intentional Tort Claims Fall Within the Subject Matter of Copyright

With regard to the first prong of the preemption analysis, the video footage of the Interview at issue is a copyrighted work that is exclusively owned by WWE. 17 U.S.C. § 102(6) provides that "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . [including] motion pictures and other audiovisual works." It is indisputable that the video footage of the Interview is such an audiovisual work under Section 102 of the Copyright Act. Plaintiffs further do not and cannot dispute that WWE is the exclusive owner of the copyright in the video footage of the Interview.

Plaintiffs admit in their Complaint and Amended Complaint that Mr. Green "was at all times material hereto employed by WWE as a road producer for digital production. His job was to conduct interviews with WWE wrestlers after wrestling matches/exhibitions." *See* Complaint ¶ 6. Thus, as a matter of copyright law, the video footage of the Interview at issue was a work made for hire, the copyright in which is owned by WWE as Green's

employer. *See* 17 U.S.C. §§ 101 ("A 'work for hire' is (1) a work prepared by an employee within the scope of his or her employment . . . .") & 201(b) ("In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.").

Additionally, Mr. Green expressly agreed that WWE owns the copyright in the Interview pursuant to an "Intellectual Property Release and Waiver" he entered into in connection with his employment for WWE. It provides, in pertinent part:

> The undersigned certifies that he/she may be photographed, videotaped or otherwise recorded by WWE in connection with his/her employment ("Footage"). The undersigned grants WWE the sole and exclusive right, including the right to authorize others, to use and incorporate the Footage, in whole or in part, in conjunction with other photographs and footage and the right to use the undersigned's name, voice, likeness and/or biographical information (collectively, "Likeness") in connection with the exploitation, advertising, promotion and/or packaging of the Footage and/or any other product into which the Footage may be incorporated, including but not limited to, radio, television, Internet, home video or other motion picture programs or sound recordings ("Products") at such times and in such manner as WWE may elect in perpetuity throughout the world, and to broadcast, exhibit and/or exploit the same in any and all media, whether now or hereafter known or devised.
>
> \* \* \*
>
> The undersigned further acknowledges and agrees . . . that the undersigned shall not be entitled to any further payments, residuals, monies or other compensation other than the undersigned's regular salary arising out of WWE's exploitation of the Footage and/or Likeness in any manner; that the undersigned, on behalf of his/her heirs, successors and assigns, hereby releases, discharges and agrees to save and hold harmless WWE and/or its assignee from any and all claims of liability arising out of any use of the Footage and/or Products; and that the Footage shall be the sole and exclusive property of WWE in perpetuity. In this regard, the Footage shall be deemed created for the benefit of WWE to qualify as a Work for Hire as defined by the Copyright Act of

11

> 1976. To the extent the Footage is deemed not to qualify as Work for Hire, the undersigned herewith assigns to WWE all right, title and interest throughout the world, in the copyright in the Footage for the full duration of all such rights, and any renewals or extensions thereof; including but not limited to the exclusive right to enforce, and to obtain registrations of, the copyrights in the Footage in the United States and throughout the world.

*See* Ex. 1 to WWE's Notice of Removal. In their Motion to Remand, Plaintiffs curiously assert that this release somehow is inapplicable to the interview at issue because, according to Plaintiffs, WWE's rights under the release supposedly "are limited to circumstances where Green was photographed or videotaped 'in connection with his employment'" and Wight's alleged attack on Mr. Green "was outside the scope of Green's employment." *See* Motion to Remand at 6-7. This is pure sophistry. As noted above, Plaintiffs admit in their Complaint that Mr. Green's job was to conduct interviews with WWE wrestlers after wrestling matches/exhibitions," *see* Complaint at ¶ 6, and, with regard to the interview at issue, "Green asked Big Show to participate in the videotaped interview as planned at the Phoenix Production Meeting." *Id.* at ¶ 39. Undeniably, therefore, the video footage of the Interview was created in connection with Green's employment. Indeed, that is the only reason that a *WWE camera operator* videotaped *Green in his capacity as a WWE employee* interviewing a *WWE wrestler* backstage at a *WWE event* following a *WWE wrestling match*. Plaintiffs' assertion to the contrary is disingenuous, to say the least.

It also is highly incongruous that Green would have filed a workers' compensation claim against WWE in Connecticut and asserted claims against WWE for Negligent Hiring, Negligent Retention, and Negligent Training/Supervision in this action for an alleged attack that Plaintiffs now assert "was outside the scope of Green's employment." *See* Motion to Remand at 7. This assertion is fatal to those claims and mandates their dismissal when the time comes for WWE to respond to Plaintiffs' Amended Complaint.

    **2.**    **Plaintiffs' Negligence, IIED, NIED, and Intentional Tort Claims Directly Impinge Upon WWE's Exclusive Rights Under Section 106 of the Copyright Act**

With regard to the second prong of the preemption analysis, "a right is equivalent to rights within the exclusive province of copyright when it is infringed by the mere act of reproducing, performing, distributing, or displaying the work at issue." *Fleet*, 50 Cal. App. 4th at 1924; *see also Baltimore Orioles, Inc. v. MLB Players Assoc.*, 805 F.2d 663, 676 (7th Cir. 1986) ("A right under state law is 'equivalent' to one of the rights within the general scope of copyright if it is violated by the exercise of any of the rights set forth in § 106."). Thus, "[t]o survive preemption, the state cause of action must protect rights which are qualitatively different from the copyright rights." *Laws*, 448 F.3d at 1143; *see also Harper & Row Publishers, Inc. v. Nation Enterprises*, 501 F. Supp. 848, 852 (S.D.N.Y. 1980), *rev'd on other* grounds, 471 U.S. 539 (1985) ("The state cause of action must protect rights . . . which are qualitatively different from the rights of reproduction, performance, distribution, or display."). Here, Plaintiffs' state law claims involve nothing more than an attempt to interfere with WWE's exercise of its exclusive right under § 106 of the Copyright Act to publicly perform and/or display the video footage of the Interview on its website. Such claims plainly are preempted by copyright law.

It is well-settled both in the Ninth Circuit and elsewhere that where a plaintiff consents to being filmed – as Green did here – only to later bring state law claims based on the reproduction, distribution and/or public performance or display of the defendant's lawfully-owned copyrighted work, the plaintiff's claims are preempted by federal copyright law. *See*, *e.g.*, *Jules Jordan*, 617 F.3d at 1153-55; (essence of performer's right of publicity claim was that "defendants reproduced and distributed the DVDs without authorization," and thus, claim was preempted by the Copyright Act); *Baltimore Orioles,* 805 F.2d at 676-79 (players' right of publicity claims preempted where they consented to the fixation of their performances in a copyrightable form); *Fleet*, 50 Cal.App.4th at 1919 (finding actors' right of publicity claim "seek[ing] only to prevent CBS from reproducing and distributing their performances in the film . . . must be preempted by federal copyright law"); *Ahn v. Midway Manufacturing Co.*, 965 F. Supp. 1134, 1137-38 (N.D. Ill. 1997) (right of publicity claims

preempted where plaintiffs signed releases consenting to being videotaped for use of their likeness in creating "Mortal Kombat" videogame).

Significantly, WWE has previously succeeded in foreclosing such baseless and preempted claims by prior plaintiffs seeking to interfere with WWE's copyrights. *See Somerson v. Vincent K McMahon, Linda E. McMahon and World Wrestling Entertainment, Inc.*, C.A. No. 1:12-cv-00043-MHS, at \*\*21-22 (N.D. Ga. August 24, 2012) (granting WWE's motion to dismiss plaintiff's claims for violation of his right to publicity and invasion of privacy based on WWE reproducing video recordings depicting plaintiff, preparing derivative works based on video recordings of plaintiff, and distributing copies of video recordings of these video recordings, as preempted by the Copyright Act); *Blood v. Titan Sports Inc.*, No. 3-94-CV-307 P, at \*19 (W.D.N.C. May 13, 1997) (granting WWE summary judgment because plaintiff's state law claims for misappropriation of name and likeness in violation of his right of publicity, invasion of privacy, unfair trade practices, unfair competition, and unjust enrichment were preempted by Copyright Act which governed videocassette tapes at issue).

Likewise, the specific state law causes of action remaining in Plaintiffs' Amended Complaint are preempted by copyright law:

**Negligence Claims**: Green's negligence claims are predicated on WWE's posting and maintaining the copyrighted footage of the Interview on the internet. *See* Complaint ¶ 129 ("WWE knew or should have known that posting the Attack on the internet involved an unreasonable risk of causing mental harm to Green."); *id.* at ¶ 130 ("WWE knew or should have known that maintaining the Attack on the internet involved an unreasonable risk of causing mental harm to Green."). Courts in this Circuit have consistently found negligence claims based on the reproduction, distribution and/or public performance or display of copyrighted material to be preempted. *See Dielsi v. Falk,* 916 F. Supp. 985, 992 (C.D. Cal. 1996) (finding copyright preemption of negligence claim "[b]ecause the essential allegation is still that Defendants unlawfully copied Plaintiff's ideas"); *AF Holdings, LLC v. Doe*, No. 5:12–CV–02048–EJD, 2012 WL 4747170, at \*3 (N.D. Cal. Oct. 3, 2012) (negligence claim

preempted where it was predicated on reproduction and distribution of copyrighted video); *Felix Cat Prods. Inc. v. New Line Cinema*, No. CV 99–9339 FMC (RCx), 2000 WL 770481, at *5 (C.D. Cal. Apr. 28, 2000) (finding copyright preemption where alleged use of plaintiff's mark in defendants' film is the basis for plaintiff's negligence claim); *AF Holdings LLC v. Rogers*, No. 12cv1519 BTM(BLM), 2013 WL 358292, at *3 (S.D. Cal. Jan. 29, 2013) (negligence claim preempted where it "rests on the theory that Defendant allowed someone else to use his internet connection even though Defendant knew or had reason to know that the individual was infringing Plaintiff's copyright").

**Emotional Distress Claims**: Green's claims for negligent and intentional infliction of emotional distress again are predicated on WWE posting and maintaining video footage of the Interview on its website. *See* Complaint ¶ 135 ("WWE knowingly, intentionally and/or recklessly caused the Attack to be posted on the Internet."); *id.* at ¶ 136 ("WWE knowingly, intentionally and/or recklessly caused the Attack to be maintained on the Internet."); *id.* at ¶ 137 ("WWE knew or should have known that there was a substantial likelihood that Green would suffer injuries from the posting of the videotape on the Internet."); *id.* at ¶ 141 ("WWE knew or should have known that its conduct [in posting and maintaining the Attack on the Internet] involved an unreasonable risk of causing emotional distress to Green."). Courts throughout the United States, including this Court, have found emotional distress claims based on the reproduction, distribution and/or public performance or display of copyrighted material to be preempted. *See Giddings v. Vison House Production, Inc.*, No. CV 05–2963–PHX–MHM, 2007 WL 2274800, at *3 (D. Ariz. Aug. 7, 2007) (finding "the extreme and outrageous conduct that Plaintiff relies upon to establish her emotional distress claim is Defendants' unlawful reproduction, sales, distribution, and forgery of Plaintiff's copyrighted art" and "[s]ince Plaintiff's emotional distress claim does not consist of any extra elements not found in the copyright infringement claim, Plaintiff's intentional infliction of emotional distress cause of action is preempted"); *see also Rainy v. Wayne State Univ.*, 26 F. Supp. 2d 963, 969 (E.D. Mich. 1998) (finding preemption since "[u]ltimately, the only substantive issue to be resolved in plaintiff's intentional infliction of emotional distress claim is whether

defendants reproduced her work without her permission. The Copyright Act provides equivalent protection for this alleged wrong."); *Griggs v. South Carolina Elec. & Gas Co.*, 463 S.E.2d 608, 610 (S.C. 1995) (finding claim for intentional infliction of emotional distress (outrage) preempted where it stems from the unauthorized publication of plaintiff's recipe in a cookbook).

**Intentional Tort Claim**:  Green's claim of "intentional tort" is also called "prima facie tort" under the definition set forth in the Restatement (Second) of Torts § 870 (Liability For Intended Consequences—General Principle) (1979) – "One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability." *See, e.g., Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir. 2000) ("The primary and final issue in this appeal is Brumfield's contention that under Pennsylvania law, the individual defendants committed an intentional tort as defined in Section 870 of the Restatement (Second) of Torts and the District Court therefore erred in dismissing his complaint. . . . The District Court rejected his objection, predicting that when faced with the question, the Pennsylvania Supreme Court would not recognize a cause of action for intentional or prima facie tort as set forth in the Restatement.");  *Chen v. U.S.*, 854 F.2d 622, 627 (2d Cir. 1988) ("In New York, causes of action for intentional tort and prima facie tort share common elements").[2]

---

[2] Although generally subject to preemption, intentional or prima facie tort is not a cause of action that is even recognized in these circumstances by either Connecticut or Arizona law. Under Arizona law, the prima facie tort cause of action simply does not exist. *See Lips v. Scottsdale Healthcare Corp.*, 214 P.3d 434, 440 at n.8 (2009*) aff'd in part, vacated in part on other grounds*, 229 P.3d 1008 (Ariz. 2010) ("The prima facie tort is described by the Restatement (Second) of Torts § 870 (1979) . . . Arizona has not adopted this principle.").  In Connecticut, "[i]t is not entirely clear whether the appellate courts of this state would recognize prima facie tort as a viable cause of action." *Deutsch v. Backus Corp.*, No. X07CV106022074S, 2012 WL 1871398, at *10 (Conn. Super. Ct. May 2, 2012).  Even if it were recognized as a cause of action in Connecticut, however, it is clear that the claim cannot be maintained where the plaintiff also has available a traditional tort theory of recovery. *See id.* at *13 (granting motion to strike a count for prima facie tort, since "multiple traditional torts cover the defendants' alleged conduct . . ."); *Choy v. Boyne,* No. CV065005693, 2006 WL 3692067, at *1 (Conn. Super. Ct. Nov. 30, 2006) (granting motion to strike prima facie tort since alleged conduct fell within traditional tort of defamation); *Ballard v. Hartford Life Ins. Co.,* No. CV 09 5031857, 2011 WL 522793, at *5 (Conn. Super. Ct. Jan.18, 2011) ("[i]n

| | |
|---|---|
| 1 | Plaintiffs' intentional tort claim here once more is premised upon WWE posting of |
| 2 | video footage of the Interview on the Internet. *See* Complaint ¶ 146 ("WWE intentionally |
| 3 | posted the videotape on the Internet."); *id.* at ¶ 147 ("WWE knew that there was a substantial |
| 4 | likelihood that Green would suffer injuries from the posting of the videotape."); *id.* at ¶ 148 |
| 5 | ("WWE intended for Green to suffer injuries, including humiliation, as a result of the posting |
| 6 | of the videotape on the Internet."). Regardless of the label, intentional or prima facie tort |
| 7 | claims equally have been found preempted by copyright law. *See, e.g., Suid v. Newsweek* |
| 8 | *Magazine*, 503 F. Supp. 146, 149 (D.D.C. 1980) ("Plaintiff claims that Newsweek's use of |
| 9 | material from his book constitutes unfair competition and prima facie tort at common law. |
| 10 | However, these claims are preempted by the Copyright Act of 1976."). Pertinently, the court |
| 11 | ruled that the claim did not allege "an additional element, separate from the act of |
| 12 | reproduction and outside the general scope of copyright." |
| 13 | In sum, Plaintiffs' negligence IIED, NIED, and intentional tort claims satisfy both |
| 14 | parts of the Ninth Circuit's two-part test for establishing copyright preemption. Accordingly, |
| 15 | this Court properly has jurisdiction over such claims pursuant to the complete preemption |
| 16 | doctrine and the Court can exercise supplemental jurisdiction over the balance of the claims |
| 17 | alleged in Plaintiffs' Amended Complaint. |

### III. CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion to Remand should be denied and the Court should grant WWE such other and further relief as the Court deems just and appropriate.

---

order to assert the prima facie tort, however, no other traditional torts must be available for the plaintiff to assert"). Because Plaintiffs have asserted causes of action for other traditional torts (e.g., negligence and intentional/negligent infliction of emotional distress) in this lawsuit, a claim for intentional or prima facie tort cannot lie under any circumstances.

RESPECTFULLY SUBMITTED this 27th day of June, 2013.

          ALVAREZ & GILBERT, PLLC

          By */s/ John T. Gilbert*
          John T. Gilbert, #004555
          Northsight Financial Center
          14500 N. Northsight Blvd., Suite 216
          Scottsdale, Arizona 85260
          (602) 263-0203 (phone)
          (480) 686-8708 (facsimile)
          jgilbert@alvarez-gilbert.com

          Jerry S. McDevitt (pro hac vice)
          Curtis B. Krasik (pro hac vice)
          K&L GATES, LLP
          K&L Gates Center
          210 Sixth Avenue
          Pittsburgh, PA 15222
          (412) 355-6500 (phone)
          (412) 355-6501 (facsimile)
          jerry.mcdevitt@klgates.com

          Attorneys for Defendant
          World Wrestling Entertainment, Inc.

# **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2013, I electronically transmitted the foregoing Response in Opposition to Plaintiff's Motion to Remand by Defendant World Wrestling Entertainment, Inc. to the Clerk's Office of the United States District Court for the District of Arizona, using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following recipient:

> George E. Mueller
> MUELLER LAW GROUP, P.A.
> 2141 East Camelback Road, Suite 100
> Phoenix, Arizona 85016
> Email: mschaefer@muellerlawgroup.com
>
> Hartley Bernstein
> BERNSTEIN CHERNEY, LLP
> 777 Third Avenue
> New York, NY 10017
> Email: hbernstein@bernsteincherney.com

By */s/ Melissa Avila*